

**SO ORDERED.**

**SIGNED this 22 day of February, 2012.**

_____
Stephani W. Humrickhouse
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
FAYETTEVILLE DIVISION

IN RE:                                                                                                      CASE NO.

**CAROLYN DENISE BOWDEN**                                                  **11-06168-8-SWH**

        **DEBTOR**

**ORDER REGARDING REAFFIRMATION AGREEMENT**

Pending before the court is the motion of the debtor to declare a reaffirmation agreement between the debtor and creditor unenforceable and to permit the debtor to retain the collateral pursuant to a "<u>Hardiman</u> ride-through."  A hearing on a previously filed motion to approve reaffirmation agreement took place in Fayetteville, North Carolina, on December 1, 2011, at which time debtor's counsel asserted certain positions that were later set forth in the motion presently before the court. For the reasons that follow, the court finds that the reaffirmation agreement is unenforceable, but declines to enter an order regarding the ride-through.

Carolyn Denise Bowden filed a petition for relief under chapter 7 of the Bankruptcy Code on August 11, 2011.  At the same time, the debtor filed her Chapter 7 Individual Debtor's Statement of Intention, indicating her intent to reaffirm a debt to Ally Financial ("Ally"), which is secured by a 2006 Chevrolet Trailblazer.  Ally has not filed a proof of claim in the debtor's case.  The debtor

entered into a proposed reaffirmation agreement with Ally, and the agreement was filed with the court on September 30, 2011. A Motion for Approval of Reaffirmation Agreement signed by the debtor was filed with the reaffirmation agreement.

The body of the reaffirmation agreement indicates that a presumption of undue hardship arises because the debtor's monthly income, minus her monthly expenses, results in a negative net monthly income of ($386.74). The repayment terms provide for reaffirmation of a debt in the amount of $4,534.31, to be repaid in thirteen monthly installments of $379.94. By way of explanation, and in an effort to rebut the presumption, debtor indicated in Section II.C.2 that she believes the agreement will not impose an undue hardship on her and that she can afford to make payment on the debt, despite the fact that her monthly expenses exceed her monthly income, because she "will have to adjust expenses to make car payments." The debtor did not, however, check any of the boxes on the first page of the reaffirmation documents that would indicate whether or not a presumption of undue hardship arose. The Reaffirmation Agreement Cover Sheet does indicate that the debtor had been represented by counsel in the negotiation of the reaffirmation agreement.

Part IV of the agreement sets forth standard language conforming to 11 U.S.C. § 524(c)(3). Captioned "CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)," it stipulates that the certification is to be filed only if the attorney represented the debtor during the course of negotiating this agreement, and provides as follows:

> I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.
>
> ___ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

> *Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Form B240A, Reaffirmation Documents, p. 4. Debtor's attorney did not sign this certification, and did not otherwise execute any affidavit or declaration in support of the reaffirmation agreement.[1]

The debtor did not request a hearing, but a hearing was nonetheless scheduled for October 18, 2011, in accordance with the court's policy to schedule for hearing all reaffirmation agreements without attorney signatures. That hearing was continued until December 1, 2011. At the hearing, debtor's counsel stated that the debtor was unable to be present, and as is customary in the case of a motion for approval of a reaffirmation agreement, Ally did not appear at the hearing or file any response to the motion. In light of the positions asserted at the hearing by debtor's counsel, and at the invitation of the court, the debtor filed a post-hearing motion to declare the reaffirmation agreement unenforceable and to grant a ride-through, which was duly served upon Ally, accompanied by a notice providing for a 14-day response period. No response was filed by Ally.

## DISCUSSION

The debtor specifically requests in her motion that the court enter an order with the following findings:

A.  That 11 U.S.C. § 521(a)(6) is inapplicable in this case as to Ally because Ally has neither an allowed claim, nor a claim for the purchase price of the property securing its claim;

B.  That the debtor fully and timely complied with the requirements of 11 U.S.C. § 521(a)(2) regarding Ally and its collateral;

---

[1] During the hearing, debtor's counsel informed the court that in his professional opinion, the debtor's entry into the reaffirmation agreement was not wholly voluntary and would impose a hardship upon her. For those reasons, counsel stated, he could not sign the certification, which conforms to the statutory language by stipulating that the agreement is both voluntary and does not impose a hardship.

    C.      That as a result of the debtor's compliance with § 521(a)(2), sections 362(h) and 521(d) are both inapplicable in this case;

    D.      That the proposed reaffirmation agreement between the debtor and Ally is unenforceable due to the refusal of the attorney who represented the debtor during the course of negotiation of the reaffirmation agreement with Ally to file a declaration or an affidavit of the type described in 11 U.S.C. § 524(c);

    E.      That since the debtor was represented by an attorney during the course of negotiating the reaffirmation agreement with Ally, § 524(c)(6) is inapplicable in this case; and

    F.      That since the reaffirmation agreement between the debtor and Ally is unenforceable due to no fault of the debtor, the debtor is entitled to a "ride-through" of the type described in In re Hardiman, 398 B.R. 161 (Bankr. E.D.N.C. 2008).

Mem. in Support of Debtor's Motion at 9-10 (with minor modifications by the court).

At the outset, the court observes that most of the debtor's requests are for findings or conclusions of law to which she is undoubtedly entitled. The court is in full agreement with the first three proposed conclusions, as well as the fifth, all of which are in accord with law that is well settled in this district. **(A)**: Ally has not filed a proof of claim and thus does not have an allowed claim, and likewise cannot assert a claim for the "purchase price" of the vehicle. Section 521(a)(6) is inapplicable. See In re Donald, 343 B.R. 524, 535-36 (Bankr. E.D.N.C. 2006) (noting that "[t]ypically, for a claim to be an allowed claim, a proof of claim must be filed"); In re Hardiman, 398 B.R. 161, 180-81 (E.D.N.C. 2008) (noting that "purchase price" in the section means the "full purchase price"). Therefore, there is no prohibition against the debtor retaining possession of her vehicle under § 521(a)(6). **(B)**: The debtor has timely complied with § 521(a)(2). She filed a statement of intention indicating that she would retain the vehicle on the same day that she filed her petition, and also entered into a reaffirmation agreement which was filed with the court ten days after the first date set for her meeting of creditors. See §§ 521(a)(2)(A) and (B). It is clear in this jurisdiction that the signing and filing of a motion to approve a reaffirmation agreement satisfies § 521(a)(2)(B). Hardiman, 398 B.R. at 187 (approving bankruptcy court's determination that "[b]y

signing the reaffirmation agreement, the debtors 'entered into' an agreement to reaffirm the debt to [creditor] Coastal. This constitutes 'performing their intention' to reaffirm, as required by § 521(a)(2)(B), as well as 'entering into an agreement of the kind specified in § 524(c),' as required by § 362(h)(1)."). **(C)**: Accordingly, the provisions of §§ 362(h) and 521(d), both of which are triggered by a debtor's failure to take the actions identical to those required under § 521(a)(2), are not applicable here - the stay is not terminated and a creditor is prohibited from enforcing an *ipso facto* clause which may be contained in the underlying agreement. See id.; §§ 362(h), 521(d). **(E)**: Finally, the debtor is represented by an attorney, and § 524(c)(6)(A) only applies "in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection." See § 524(c)(6)(A).[2]

Additionally, the debtor asserts in part **(D)** of the request for relief that the proposed agreement is unenforceable "due to the refusal of the attorney who represented the debtor during the

---

[2] The court strongly believes that a policy **requiring** attorneys to represent their clients in the negotiation of reaffirmation agreements is long overdue in this district and will commend this issue to the Local Rules Committee for action in that regard. An attorney has an affirmative duty to *at least* "fully advise the debtor of the legal effect and consequences of [the] agreement and any default under [the] agreement." However, a policy requiring debtors' counsel to represent their clients in the negotiation of reaffirmation agreements, and to indicate that representation on the Reaffirmation Agreement Cover Sheet, should not preclude an attorney from signing the certification with modifications or strikeouts as the attorney finds appropriate.

A representation requirement of this nature would prevent the unfortunate practice that has developed in this district, which is for attorneys to routinely take the position that they did not represent the client in the course of negotiating the agreement, yet to then show up at the hearing for approval of the reaffirmation agreement **asking** for disapproval of the agreement and a ride-through. The court is sympathetic to the plight of counsel who feel constrained by the requirements of § 524(c), which clearly (albeit incredibly) did not contemplate representation of a client where the attorney does not believe that the undue hardship can be rebutted. Allowing counsel to modify the § 524(c) certification to more accurately set forth their position ensures that debtors are given adequate information and limits court involvement to two defined situations: 1) the case of a true *pro se* debtor, under § 524(c)(6)(A); and 2) review of counsel's determination that the undue hardship has been rebutted in the case of represented debtors, pursuant to § 524(m).

course of negotiation of the reaffirmation agreement with Ally to file a declaration or an affidavit of the type described in 11 U.S.C. § 524(c)."  The court agrees with the debtor that "[s]ection 524(c)(3) applies in every instance where a debtor has been represented by an attorney during the course of negotiating a proposed reaffirmation agreement, and in each such case the filing of the § 524(c)(3) declaration by the attorney remains a stand-alone pre-requisite to enforceability." Debtor's Mem. of Law at 7.  Attorneys contend with this certification in various ways.  The certification may be left entirely blank, as it was in this case.  This can be construed as an assertion by the attorney that *no* part of the form can be certified.  Or, it may be an assertion by the attorney that *some* part of the form cannot be certified but, because the attorney cannot certify the section in its entirety, the attorney elected to leave it blank.  A simple oversight in forgetting to certify would, of course, look exactly the same.

Other times, an attorney strikes through certain parts of the certification, but still executes it. In re Perez, 2010 WL 2737187 *2 (Bankr. D.N.M. 2010) (counsel represented debtor in negotiations and signed Part C, but struck through the "does not impose an undue hardship on the debtor or a dependent of the debtor" portion of certification; the agreement therefore did not have all the certifications required to satisfy § 524(c)(3), and was unenforceable such that no hearing was necessary).  Or, an attorney may indicate on the certification that they cannot in good conscience support a client's (as in, *any* client's) reaffirmation of a debt pursuant to such an agreement. In re Isom, 2007 WL 2110318 (Bankr. E.D. Va. 2007) (counsel represented debtor during negotiations but did not execute certification, instead indicating to the court that it "was not her practice to make any such certification [because] . . . such determination was best left up to the Court"; agreement lacked necessary certifications and was therefore held to be unenforceable).

These permutations all lead to one conclusion. If the attorney certification is not complete, there is no enforceable reaffirmation agreement, because the plain language of the statute requires strict compliance. See, e.g., Isom, 2007 WL 2110318 at *3 (lack of attorney certification "in and of itself" renders agreement unenforceable); Perez, 2010 WL 2737187 *4 (discussing the requirements for enforceability of a reaffirmation agreement entered into by a represented debtor, and concluding that the certification of counsel is a statutory requirement to enforceability); In re Minardi, 399 B.R. 841, 846 (Bankr. N.D. Okla. 2009) (reaffirmation is "void and unenforceable" if attorney does not certify because agreement must fully comply with specific statutory requirements). Failure to sign at all, or affixing a signature with portions of the certification stricken, will be considered by this court as a failure to make the certification required by § 524(c)(3), thus rendering the reaffirmation agreement unenforceable.

What remains unsettled is the debtor's counsel's final two-fold assertion that 1) no statutory authority exists for the court *even to hold a hearing* if a debtor is represented by counsel during the negotiation of a reaffirmation agreement where counsel does not execute the certification; and, further, that 2) in that instance, the debtor is *automatically* entitled to a Hardiman ride-through. To date in this district, when reaffirmation agreements concerning personal property are filed by a debtor who was represented in the course of negotiating the agreement, but do not contain the certification of that attorney, the court treated the matter essentially as if the debtor was *pro se*, and set it for hearing. That is what occurred in this case. The court declines to tackle the issue of its *authority* to hold a hearing under these circumstances, but holds that in the future, when such a fact situation presents itself, a hearing will not be set. The agreement is unenforceable on its face, judicial action is not warranted, and a hearing would therefore serve no legitimate purpose.

Debtor's request that this court "deem" that under the circumstances his client is entitled to an automatic <u>Hardiman</u> ride-through is, in essence, a request for a comfort order and the court declines to accommodate it. Section 524 contemplates that the court will not intervene in the reaffirmation arena where the debtor is represented by counsel except in the limited instance of reviewing counsel's determination regarding whether the presumption of undue hardship has been rebutted. There is no good reason to extend that involvement. If and when a creditor takes action against a debtor or his property that is inconsistent with §§ 521 and 362, the court can then intercede to enforce the stay or discharge injunction.[3]

For the foregoing reasons, the reaffirmation agreement is not enforceable. No further orders will be entered with regard to the reaffirmation agreement at this time.

**SO ORDERED**.

**END OF DOCUMENT**

---

[3] This court, like the court in <u>Perez</u>, 2010 WL 2737187, presently expresses no view as to the effect of the discharge injunction in the context of the applicability of *ipso facto* clauses.